IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20-cv-00279-MOC-WCM

| | | |
|---|---|---|
| JOHN WILLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND |
| | ) | RECOMMENDATION |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on the parties' cross motions for summary judgment (Docs. 13, 15), which have been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

## I.    Procedural Background

In March of 2017, Plaintiff John Willis ("Plaintiff") filed an application for disability insurance benefits, alleging disability beginning October 23, 2016. Transcript of the Administrative Record ("AR") 184-187.

On August 27, 2019, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued an unfavorable decision. AR 12-34. That decision is the Commissioner's final decision for purposes of this action.

## II.  The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "cerebral vascular accident (CVA); bipolar depression; anxiety; and neurocognitive disorder." AR 17. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform medium work…except he can frequently climb ramps and stairs, but never climb ladders, ropes or scaffolds. He can frequently balance but can have no concentrated exposure to unprotected heights, moving mechanical parts, or hazardous work settings, and can never operate a commercial motor vehicle. He is able to understand, remember, and follow instructions consistent with reasoning level development two and language level two. He is able to respond appropriately to supervision and tolerate frequent interaction with co-workers and supervisors but no more than occasional interaction with the public. He is able to perform routine and repetitive tasks consistent with reasoning development level two but with a low level of work pressure, defined as work not requiring multitasking, production rate pace, assembly line work, or teamwork to complete a task. He retains the ability to remain on task for two hours at a time before needing a 15-minute break throughout a normal workday. He can use commonsense understanding to make work-related decisions and can tolerate no more than occasional routine changes in work setting.
>
> AR 21.

Applying this RFC, the ALJ found that Plaintiff had the ability to perform certain jobs that exist in significant numbers in the national economy such that Plaintiff was not disabled during the relevant period. AR 28-29.

## III.    Plaintiff's Allegations of Error

Plaintiff contends that the ALJ failed to explain why, despite affording great weight to the state agency psychologists' opinions (AR 75-78; AR 90-99), certain limitations in those opinions were not incorporated into Plaintiff's RFC. Additionally, Plaintiff argues that the ALJ erred in his consideration of the opinion of Dr. Joseph Lanier, who performed a psychological consultative examination (AR 396-399). Finally, Plaintiff argues that the ALJ failed to explain how Plaintiff can perform work at a "medium" exertional level.

## IV.    Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1505; 416.905.  The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis.  20 C.F.R. §§ 404.1520; 416.920.  The burden rests on the claimant through the first four steps to prove disability.  Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016).  If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five

3

that the claimant can perform other work.  Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards.  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).  Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that he is not disabled is supported by substantial evidence in the record and based on the correct application of the law.  Id.

V.    Discussion

A. Plaintiff's Mental Limitations

The Dictionary of Occupational Title's Reasoning Development scale has six levels—Level 1 requires the least reasoning ability, and Level 6 requires the most reasoning ability. See DOT, App. C, 1991 WL 688702.  A "reasoning level of two" requires the ability to "[a]pply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions" and to "[d]eal

with problems involving a few concrete variables in or from standardized situations." DOT, Appendix C, 1991 WL 688702 (emphasis added).

Here, the ALJ found that Plaintiff retained the ability to "understand, remember, and follow instructions consistent with reasoning level development two" and to "perform routine and repetitive tasks consistent with reasoning development level two…" AR 21.[1] Therefore, the ALJ effectively found that Plaintiff had the ability to understand detailed but uninvolved written or oral instructions.

### 1. Opinions of Dr. Souther and Dr. Tyrrell

State agency consultant Dr. Lori Souther provided an opinion regarding Plaintiff's mental limitations on initial review, and Dr. Linda Tyrrell set forth an opinion regarding Plaintiff's mental limitations on reconsideration. AR 75-78; AR 90-99.

Both Dr. Souther and Dr. Tyrrell concluded that Plaintiff retained the mental capacity to engage in simple, routine, repetitive tasks in a stable, non-production work setting with minimal social demands. AR 78 & 92.

---

[1] In contrast, Level 1 reasoning requires the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, Appendix C, 1991 WL 688702. In determining that Plaintiff was not disabled, the ALJ relied on occupations requiring a reasoning level of two. AR 29 (citing DICOT 369.687-026 (G.P.O.), 1991 WL 673074 (Marker); DICOT 361.685-010 (G.P.O.), 1991 WL 672985 (Conditioner-Tumbler Operator); DICOT 362.686-010 (G.P.O.), 1991 WL 673006 (Dry-Cleaner Helper)).

When developing Plaintiff's RFC, the ALJ assigned "great weight" to these consultants' opinions. AR 25. The ALJ limited Plaintiff to performing "routine and repetitive tasks consistent with reasoning development level two but with a low level of work pressure, defined as work not requiring multitasking, production rate pace, assembly line work, or teamwork to complete a task." AR 21. See Lawrence v. Saul, 941 F.3d 140, 143 (4th Cir. 2019) (there is no apparent conflict between an occupation requiring a reasoning level of two and a limitation to simple, routine, or repetitive tasks).

However, Dr. Souther and Dr. Tyrrell also noted, with respect to Plaintiff's specific understanding and memory limitations, that he was "able to understand *short* and simple instructions and work-like procedures." AR 76; 98 (emphasis added). The ALJ did not acknowledge or discuss this portion of the state agency consultants' opinions.

Instead, the ALJ concluded that Plaintiff was able to "understand, remember, and follow instructions consistent with reasoning level development two…," i.e., "detailed but uninvolved" instructions. AR 21. This conclusion appears to conflict with the opinions of Dr. Souther and Dr. Tyrrell. See Thomas v. Berryhill, 916 F.3d 307, 314 (4th Cir. 2019) (a claimant who can "follow short, simple instructions" cannot perform occupations requiring the ability to "carry out detailed but uninvolved written or oral instructions…."); Dunivant v. Saul, 1:19CV923, 2021 WL 620711, at *4 (M.D.N.C. Feb. 17, 2021)

6

("in <u>Thomas</u>, the Fourth Circuit held that there was an apparent conflict between jobs requiring Level 2 reasoning and a limitation to 'short, simple instructions.' However, in <u>Lawrence v. Saul</u>, 941 F.3d 140, 143 (4th Cir. 2019), the Fourth Circuit clarified that this conflict results from the restriction to 'short' instructions, rather than the simplicity of the instructions or tasks"); <u>Johnson v. Saul</u>, No. 5:18-CV-00152-FDW, 2020 WL 1429244, at \*5 (W.D.N.C. Mar. 19, 2020) (finding an apparent conflict between the RFC requirement of "short, simple instructions" and the Reasoning Level 2 requirement of "detailed but uninvolved instructions" required for the jobs identified by the vocational expert); <u>Fincher v. Berryhill</u>, No. 3:17-CV-00624-RJC, 2019 WL 1317731, at \*4 (W.D.N.C. Mar. 22, 2019).

"[W]hen an ALJ does not include certain limitations in the RFC from a source given significant weight, the reviewing court must remain able to ascertain from the ALJ's decision <u>why</u> the ALJ omitted those limitations." <u>Bond v. Saul</u>, No. 1:19CV901, 2020 WL 4606412, at \*5 (M.D.N.C. Aug. 11, 2020) (emphasis in original) (citing <u>Monroe v. Colvin</u>, 826 F.3d 176, 189 (4th Cir. 2016)). Here, the ALJ did not explicitly discuss Dr. Souther's and Dr. Tyrrell's opinions regarding Plaintiff's memory and understanding limitations. The ALJ did, however, discuss other record evidence regarding Plaintiff's ability to remember and understand. Accordingly, the undersigned has

considered whether the ALJ's discussion of this other evidence provides a sufficient explanation.

The ALJ assigned "great weight" to the opinion of Dr. Cheryl Davis, who conducted a psychological examination of Plaintiff on October 12, 2017. AR 26 (discussing AR 415-419). Dr. Davis opined that Plaintiff processed information "slower than expected for an individual his age," that his "memory skills ranged from Extremely Low to Average," and that he "had difficulty recall[ing] information that was new and immediately presented to him, and significant difficulty recalling visual information" such that he would have "difficulty learning new information or tasks." See AR 415-419. The ALJ did not explain how Dr. Davis' conclusions translated into his determination that Plaintiff could understand and remember detailed but uninvolved instructions.

Likewise, the ALJ discussed the opinion of Dr. Joseph Lanier, who conducted a psychological examination on May 24, 2017. AR 26 (discussing AR 396-399). Dr. Lanier concluded that although Plaintiff "demonstrated adequate abilities for understanding, remembering and following simple instructions and for sustaining adequate attention to perform simple, routine and repetitive tasks in a secure and supportive environment…his current clinical status is likely to compromise his performance in a more sustained and complex social or occupational setting." AR 399. Consequently, it does not

appear that Dr. Lanier's opinion supports the ALJ's conclusion that Plaintiff can understand and remember detailed but uninvolved instructions.

Finally, the ALJ reviewed Plaintiff's mental health treatment notes and explicitly cited records reflecting that Plaintiff's short and long-term memory was intact, as was his ability for abstract thinking and arithmetic calculations. See AR 24 (citing AR 433 (April 2, 2019 treatment note); AR 440 (January 22, 2019 treatment note); AR 447 (November 26, 2018 treatment note); AR 454 October 22, 2018 treatment note); AR 464 (June 29, 2018 treatment note); AR 476 (May 21, 2018 treatment note); AR 483 (March 21, 2018 treatment note); AR 492 (February 22, 2018 treatment note)). The ALJ did not, however, explain how these treatment records translated into the understanding and memory limitations set out in Plaintiff's RFC.

The undersigned will therefore recommend remand on this basis.

### 2. Opinions of Dr. Lanier and Dr. Davis

Relatedly, Plaintiff argues that the ALJ failed to explain adequately his decision to afford Dr. Lanier's opinion (AR 396-399) "partial weight." As noted above, Dr. Lanier opined that Plaintiff had the ability to understand, remember, and follow simple instructions and the ability to perform simple, routine, and repetitive tasks "in a secure and supportive environment." AR 399.

In considering Dr. Lanier's opinion, the ALJ explained that, in addition to being based on a one-time exam and relying heavily on Plaintiff's subjective reports, Dr. Lanier's conclusion was inconsistent with Dr. Lanier's own findings and contradicted by the opinion of the other consultative examiner, Dr. Davis. AR 26.

With respect to Dr. Lanier's own findings, the ALJ pointed out that Dr. Lanier's examination reflected that Plaintiff's cognitive function was "within a qualitatively described average level." AR 24. The ALJ additionally noted that Dr. Lanier's examination reflected that Plaintiff "required only one trial to learn three semantically unrelated works," was able to recall four digits forward and three digits backward, and "slowly complete[d] serial threes correctly." Id.; AR 26. While the ALJ found that such examination results confirmed Plaintiff's "abilities for simple instructions and tasks," it does not appear that the ALJ accepted Dr. Lanier's opinion that Plaintiff required a "secure and supportive environment." AR 26.

Additionally, the ALJ contrasted Dr. Lanier's opinion with that of Dr. Davis, who concluded that although Plaintiff "likely would have difficulty learning new information or tasks," he would be able to remember such information once it was learned. See AR 26 (discussing AR 419); see also AR 25 (discussing Dr. Davis' consultative exam findings which "indicated some slowed thought processing" but that Plaintiff "was still able to provide relevant

responses" and exhibited "average range" cognitive functioning, and that Plaintiff's performance on memory testing "suggested that the claimant is better able to recall information that is verbally presented to him, and information that has been previously learned").

Accordingly, the undersigned is persuaded that the ALJ explained adequately his treatment of Dr. Lanier's opinion.

### B. Plaintiff's Gait

The ALJ determined that Plaintiff retained the capacity to perform "medium" work, which requires, among other things, the ability to stand or walk, off and on, for a total of approximately 6 hours in an 8-hour workday. SSR 83-10, 1983 WL 31251. For most "medium" level jobs, "being on one's feet for most of the workday is critical." Id.

Plaintiff argues that although the ALJ summarized the medical evidence, he never explained his conclusion that Plaintiff could stand or walk for six hours a day, as would be required for medium work. Plaintiff points to medical records reflecting his "slow, shuffling, and cautious gait," a treatment note reflecting Plaintiff's reduced muscle strength, and a consultative examination report completed by Dr. Aregai Girmay noting that Plaintiff "has a spastic gait." See Doc. 14 at 17-18 (citing AR 348 (March 13, 2017 treatment note reflecting Plaintiff's gait as "shuffling, slow and cautious and stiff"); AR 357-358 (February 11, 2017 treatment note reflecting same gait and 4/5

11

reduced muscle strength); AR 364 (January 25, 2017 treatment note reflecting same gait); AR 424 (Dr. Girmay physical consultative examination report)). Plaintiff does not, however, explain how these findings preclude his ability to stand or walk for six hours in an eight-hour workday.

In developing Plaintiff's RFC, the ALJ acknowledged these medical records and findings. AR 23; see also AR 25. However, the ALJ also noted that records from a July 7, 2017 emergency room visit reflected Plaintiff's "grossly normal power and tone," that Plaintiff had reported during his examination with Dr. Girmay that his balance was "okay," and that later medical records indicated that Plaintiff exhibited a normal gait. AR 23 (citing AR 402 (emergency room physical examination notes); AR 423 (Dr. Girmay examination); AR 495 (December 18, 2017 treatment note reflecting normal gait)). Additionally, the ALJ explained that although Plaintiff exhibited a "spastic gait" during Dr. Girmay's examination, he also displayed normal coordination, did not require an assistive device, and had full range of motion and 5/5 strength throughout the upper and lower extremities. AR 23 (citing AR 422-426)).[2] The ALJ also explained that while the record was "devoid of any additional treatment notes regarding any physical issues, ongoing mental

---

[2] Although not noted by the ALJ, Dr. Girmay additionally opined that Plaintiff could "walk 100 feet without difficulty." AR 426.

health records consistently note the claimant to present with normal muscle strength, tone, gait, and station." AR 23 (citing AR 430-492).

Finally, the ALJ afforded "great weight" to the opinions of the state agency consultants, Dr. Lillian Horne and Dr. Frank Virgili, who each concluded that Plaintiff was capable of standing or walking for 6 hours in an 8-hour workday with certain limitations regarding climbing and balancing. See AR 25 (citing AR 73-75; 94-97).

The ALJ's reliance on the state agency consultants' opinions when developing Plaintiff's RFC was appropriate, and the undersigned is otherwise not persuaded that remand is required on this issue. See Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir.2005) (ALJ may rely on opinion of medical expert who has thoroughly reviewed the record when the opinion is consistent with objective medical evidence in the record).

### C. Plaintiff's Notice of Supplemental Authority

On August 17, 2021, Plaintiff filed a "Notice of Supplemental Authority" directing the Court to the recent Supreme Court cases of Collins v. Yellen, 141 S.Ct. 1761 (2021) and Seila Law, LLC v. Consumer Financial Protection Bureau, 140 S.Ct. 2183 (2020). Doc. 18. As an exhibit to the filing, Plaintiff attached a Memorandum Opinion for the Deputy Counsel to the President (the "Memorandum Opinion") which purports to state that the President may remove the Commissioner of Social Security at will and that the statutory

removal restriction in 42 U.S.C. § 902(a)(3) is constitutionally unenforceable. Doc. 18-1.

However, Plaintiff does not make any argument regarding Collins, Seila Law, or the Memorandum Opinion. See Parker v. Saul, No. 3:20cv539-GCM, 2021 WL 4596340 at *1 (W.D.N.C. Oct. 6, 2021) (declining to consider the submission of this supplemental authority where Plaintiff failed "to make any showing or argument as to how either case or the memorandum opinion supports Plaintiff's argument that the Commissioner's decision on his disability claim was incorrect") (citing Haperin v. Saul, 855 Fed. Appx. 114, 120 n.8 (4th Cir. Apr. 6, 2021) (A party "waives an argument by ... failing to develop its argument—even if its brief takes a passing shot at the issue") (internal citations omitted); Whiteside v. Berryhill, No. 1:18-CV-00176-FDW, 2019 WL 1639936, at *3 (W.D.N.C. Apr. 16, 2019); Sanders v. Berryhill, No. 1:16-CV-0236-MOC-DLH, 2017 WL 3083730, at *3 (W.D.N.C. June 12, 2017) ("It is not the role of this Court to recraft a legal argument submitted by counsel or make counsel's legal argument for him or her; this Court's role is to rule on the specific legal arguments presented by counsel")).

## VI.    Recommendation

The undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Doc. 13) be **GRANTED**, and that the Commissioner's Motion for Summary Judgment (Doc. 15) be **DENIED.**

Signed: October 20, 2021

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).